IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-HC-2151-BO



FILED
MAY 27 2011
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WALTER WOODEN, | ) | |
| | ) | |
| Respondent. | ) | |

In this action, the government seeks to commit Walter Wooden (hereinafter "Wooden" or "respondent") as a sexually dangerous person pursuant to 18 U.S.C. § 4248 ("§ 4248"), a civil commitment statute established by the Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 587 (2006) ("Adam Walsh Act"). Wooden has moved to dismiss the action on jurisdictional and constitutional grounds. For the reasons that follow, the court concludes, although Wooden's presence in the federal prison system stems from a conviction for violations of the Official Code of the District of Columbia and not for a violation of the United States Code, Wooden is subject to § 4248 because he was in the legal custody of the federal Bureau of Prisons (hereinafter "BOP") at the time this case was initiated. Therefore, Wooden's jurisdictional challenge is without merit. Furthermore, Wooden has failed to establish a constitutional violation. Accordingly, Wooden's motion to dismiss [D.E. 7] is DENIED.[1]

---

[1] This order addresses identical issues to those raised in United States v. Johnson, 5:09-HC-2045-BO. A similar order has been filed in that case contemporaneously with this order.

# I. BACKGROUND

The government filed its certificate [D.E. 1] initiating the present case on July 15, 2010. At the time of the certification, Wooden was housed at the Federal Correctional Institution, Butner, North Carolina (hereinafter "Butner"), serving a criminal sentence after the revocation of his parole on a 1984 conviction in the District of Columbia Superior Court.[2] Wooden was sentenced in 1984 for taking indecent liberties[3] and sodomy[4] upon an 8-year-old male on July 16, 1983, and for enticing[5] a 12-year-old male on August 16, 1983. Wooden received an aggregate sentence of 25 years in prison. He was first released on parole in 2000, but returned to custody in early 2001 for non-sexual violations of his parole conditions. He made parole again in 2002, but he was returned to custody on July 5, 2005, after he admitted to molesting a 7-year-old boy in the fall of 2004. Based on this admission, Wooden's parole was revoked again. The expiration date for the full term remaining on his sentence was calculated as March 22, 2012, but he had a projected release date of October 12, 2010, for mandatory parole. Nevertheless, on July 15, 2010, the government filed its certificate initiating the present commitment action, which automatically stayed Wooden's release. See 18 U.S.C. § 4248(a). Therefore, Wooden remains in custody at Butner.

On December 15, 2010, Wooden filed a motion to dismiss for lack of jurisdiction [D.E. 7]. On December 17, 2010, Wooden filed a memorandum in support [D.E. 8]. On December 22,

---

[2] The court's understanding of the origin and history of Wooden's incarceration at the time of the certification in this case has been gathered from the government's certification [D.E. 1] and descriptions of the procedural history contained in various reports of mental health examiners which have been filed in this case under seal.
[3] D.C. CODE § 22-3501(a) (1981 ed.) (repealed 1994).
[4] D.C. CODE § 22-3502 (1981 ed.) (repealed 1994).
[5] D.C. CODE § 22-3501(b) (1981 ed.) (repealed 1994).

2

2010, the government filed a response [D.E. 9]. On February 16, 2011, the court ordered the parties to submit additional memoranda. On February 24, 2011, Wooden filed a supplemental memorandum [D.E. 24]. On March 3, 2011, the government filed its response [D.E. 27]. On May 13, 2011, Wooden filed an additional supplemental memorandum [D.E. 41]. The matter is ripe for ruling.

## II. DISCUSSION

Wooden argues the present commitment action should be dismissed for lack of jurisdiction because of Wooden's status as a person convicted and sentenced under the District of Columbia Official Code (hereinafter "D.C. Code offender"). In support of this jurisdictional challenge, Wooden asserts that D.C. Code offenders who are housed in a BOP facility are not "in the custody of the Bureau of Prisons" as that phrase in § 4248 has been interpreted by the United States Court of Appeals for the Fourth Circuit. Wooden further argues that it is unconstitutional to apply § 4248 against D.C. Code offenders because of the existence in the District of Columbia Official Code of provisions for the commitment of "sexual psychopaths." See D.C. CODE § 22-3803 *et seq.* (hereinafter "Sexual Psychopath Act"). For the reasons that follow, the court holds Wooden's jurisdictional and constitutional challenges are without merit.

### A. D.C. Code Offenders are in the legal custody of the Bureau of Prisons.

The Adam Walsh Act contains a jurisdictional requirement that authorizes the initiation of a commitment action against a person "in the custody of the Bureau of Prisons." 18 U.S.C. § 4248(a).[6] The Fourth Circuit held that "under § 4248 the word 'custody' refers not to physical

---

[6] The statute also authorizes the initiation of a commitment proceeding against a person "who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons relating to the mental

custody or some qualified derivative but rather to legal custody. The statutory language 'in the custody of the Bureau of Prisons' therefore requires the BOP to have ultimate legal authority over the person's detention." United States v. Joshua, 607 F.3d 379, 388 (4th Cir. 2010).

According to the laws of the District of Columbia, "All prisoners convicted in the District of Columbia for any offense . . . shall be committed . . . to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served." D.C. CODE. § 24-201.26. This statute was in effect at the time of Wooden's conviction and at the time of his parole revocation. It was in enacted in 1940 by the 76th Congress. See Act of June 6, 1940, ch. 254, 54 Stat. 242 (1940). As such, Wooden was in the legal custody of the Attorney General at the time of the filing of the certificate which initiated the present commitment action. Assuming *arguendo* that legal custody on the part of the Attorney General is different from legal custody on the part of the Bureau of Prisons, subsequent legislation makes it clear that the Bureau of Prisons has legal custody over all prisoners sentenced under the District of Columbia Official Code.

The National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. 105-33, § 11201, 111 Stat. 712, 734 (1997) (hereinafter "Revitalization Act"), initiated a process by which all D.C. Code offenders would be housed in facilities operated or contracted for by the Bureau of Prisons. The Revitalization Act further provided that the Lorton Correctional Complex, which had been the primary facility for the housing of D.C. Code offenders, would be closed. Specifically, the Revitalization Act included a provision that states,

---

condition of the person." 18 U.S.C. § 4248(a). Neither of these alternate jurisdictional bases apply to Wooden. Therefore, the government may proceed only if Wooden was "in the custody of the Bureau of Prisons" at the time of certification.

4

> any person who has been sentenced to incarceration pursuant to the District of Columbia Official Code ... shall be designated by the Bureau of Prisons to a penal or correctional facility operated or contracted for by the Bureau of Prisons, for such term of imprisonment as the court may direct. <u>Such persons shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed.</u>

D.C. CODE § 24-101(a) (emphasis added). This provision is retroactive, and it applies to Wooden despite the fact he was originally sentenced prior to its passage.[7] Thus, unlike the "Memorandum of Agreement" between the Army and the BOP which was at issue in Joshua, a District of Columbia statute endows the Bureau of Prisons with legal custody over D.C. Code offenders. Cf., Joshua 607 F.3d at 381-82 ("Memorandum of Agreement" explicitly states that military prisoners in BOP facilities remain in the permanent custody of the U.S. Army). That is, some military prisoners are housed in BOP facilities by contract, whereas all D.C. Code offenders are in BOP custody by statute.

Other provisions of the Revitalization Act show Congress intended federal commitment statutes including § 4248 to apply to D.C. Code offenders. Although the District of Columbia Official Code and the United States Code are separate and distinct, Congress has the power to enact and amend the statutes of both codes. Moreover, in passing the Revitalization Act, Congress actually amended both codes. In the same legislation which made D.C. Code offenders subject to any law applicable to inmates serving sentences for federal offenses, the longstanding federal commitment statutes in Chapter 313 of Title 18 of the United States Code were also amended so that they would apply to D.C. Code offenders. See 111 Stat. at 739. Prior to the

---

[7] Additionally, the court notes that at the time the present § 4248 commitment action was initiated, Wooden was incarcerated pursuant to a revocation of parole. This revocation took place after the passage of the Revitalization Act.

5

Revitalization Act, the entirety of Chapter 313 was inapplicable to prosecutions arising under the District of Columbia Code.

An understanding of how the Revitalization Act changed Chapter 313 requires an examination of the chapter's origin and development. Chapter 313 was created in 1948 as part of a comprehensive revision of Title 18 of the United States Code. See Act to Revise, Codify and Enact into Positive Law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure," ch. 645, 62 Stat. 683, 847 (1948). In the 1948 Act, Chapter 313 was entitled "Mental Defectives," and it provided for the examination and treatment of inmates "alleged to be insane or of unsound mind or otherwise defective." Id. This original version of Chapter 313 consisted only of sections 4241 through 4243, but the original provisions do not correspond to the current statutes bearing those section numbers.

In 1949, five additional sections were added to Chapter 313 with the following section headings:

    4244. Mental incompetency after arrest and before trial.

    4245. Mental incompetency undisclosed at trial.

    4246. Procedure upon finding of mental incompetency.

    4247. Alternate procedure on expiration of sentence.

    4248. Termination of custody by release or transfer.[8]

Act to Provide for the Care and Custody of Insane Persons Charged with or Convicted of Offenses against the United States, and For Other Purposes, ch. 535, 63 Stat. 686 (1949). The

---

[8] The section then denominated as § 4248 bears no relation to the current version § 4248.

provisions added in 1949 included a procedure for committing dangerous individuals past the expiration of their criminal sentence.

Thirty-five years later in 1984, Chapter 313 underwent a major revision. See Insanity Defense Reform Act of 1984, Pub. L. 98-473, 98 Stat. 2057, 2057-67 (1984) (hereinafter "IDRA"). The title of Chapter 313 was changed to "Offenders with Mental Disease or Defect." The eight former sections were reconstituted into seven sections, numbered 4241 through 4247. Id.[9] The section numbers established by the IDRA remain the same in the current version of Chapter 313. Id. For example, the former section 4244, dealing with competency to stand trial, corresponds to the current section 4241. Id. The former section 4247, dealing with commitment of prisoners whose mental condition poses a danger to persons or property, corresponds to the current section 4246. Id. The IDRA also added entirely new provisions, including those dealing with persons found not guilty by reason of insanity, codified in section 4243. Id. Importantly, the IDRA included an express limitation in subsection (j) of section 4247 that "[t]his chapter does not apply to a prosecution under an act of Congress applicable exclusively to the District of Columbia or the Uniform Code of Military Justice." Id.

Aside from a few non-substantive amendments, Chapter 313 remained largely unchanged for the next 13 years. In 1997, Congress passed the Revitalization Act, which primarily amended the District of Columbia Official Code, but it also modified Chapter 313 of Title 18 of the United States Code. Specifically, the limitation in section 4247(j) was amended so that, instead of the entirety of chapter 313 being inapplicable to D.C. Code offenders, now only four sections are

---

[9] For 22 years between 1984 and 2006, Chapter 313 did not include a section 4248.

expressly inapplicable to D.C. Code offenders. That revision remains the current version of section 4247(j). It reads ,"Sections 4241, 4242, 4243, and 4244 do not apply to a prosecution under an Act of Congress applicable exclusively to the District of Columbia or the Uniform Code of Military Justice." 18 U.S.C. § 4247(j). Therefore, the Revitalization Act authorized the application of the remaining sections of Chapter 313 to D.C. Code offenders. At the time, the remainder of the chapter consisted of sections 4245, 4246, and 4247. Furthermore, the Revitalization Act added the phrase "in the custody of the Bureau of Prisons" to 18 U.S.C. § 4246.

In 2006, the Adam Walsh Act created the current version of § 4248, which the Supreme Court has described as "a modest addition to a set of federal prison-related mental-health statutes that have existed for many decades." Comstock, 130 S. Ct. at 1958. Therefore, § 4248 must be read *in pari materia* with section 4246.

Section 4247(j) remains as it was before the Adam Walsh Act was passed. As such, § 4248 is not included among the sections of Chapter 313 which are expressly inapplicable to D.C. Code offenders. Thus, Congress has carved out certain sections of Chapter 313 as inapplicable to D.C. Code Offenders, but Congress did not so carve out § 4248.

The Revitalization Act endowed the Bureau of Prisons with legal custody over imprisoned D.C. Code offenders and subjected such persons to commitment under § 4246. Because the jurisdictional element of § 4248 uses the same phrase "in the custody of the Bureau of Prisons" which was added to § 4246 as part of the Revitalization Act, a statute specifically reforming the governmental structure of the District of Columbia, and because Congress did not add § 4248 to the list in § 4247(j) of sections that are inapplicable to D.C. Code offenders when

8

passing the Adam Walsh Act, the court concludes that § 4248 does apply to D.C. Code offenders. Therefore, Wooden's jurisdictional challenge is without merit.

## B. Wooden fails to establish a constitutional violation based on the Sexual Psychopath Act.

The court ordered that the parties brief the issue of whether the government may proceed with a § 4248 action against a D.C. Code offender in light of the existence of the Sexual Psychopath Act, D.C. CODE § 22-3803 *et seq.* [D.E. 23]. Wooden filed a supplemental memorandum [D.E. 24], and the government filed its response [D.E. 27].[10] As Wooden concedes, "a statute should not be construed so as to raise serious constitutional problems." [D.E. 24] at 3 (internal quotation marks and citation omitted). Accordingly, the court concludes that Wooden has failed to assert grounds for which the existence of the Sexual Psychopath Act requires the dismissal of a § 4248 action against a D.C. Code offender.

### III. CONCLUSION

For the foregoing reasons, respondent's motion to dismiss [D.E. 7] is hereby DENIED.

SO ORDERED. This 26 day of May 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[10] Wooden filed an additional supplemental memorandum [D.E. 41] in which he argues that "because he was already put in jeopardy of commitment in the District of Columbia, the Double Jeopardy Clause prevents the government from imposing punishment again based on the same acts." Assuming without deciding that the Double Jeopardy Clause applies, Wooden has not previously been placed in jeopardy of commitment because no proceedings under the Sexual Psychopath Act were ever initiated against Wooden. "Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier having jurisdiction to try the question of the guilt or innocence of the accused." Serfass v. United States, 420 U.S. 377, 391 (1975). Therefore, Wooden's Double Jeopardy challenge is without merit.