UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


UNITED STATES OF AMERICA,          )
          PETITIONER,          )
                           )
        V.          )          5:10-HC-2151-BO
                           )
WALTER WOODEN,          )
          RESPONDENT.          )
_____          )


**<u>CORRECTED TRANSCRIPT</u>**


STATUS CONFERENCE
FEBRUARY 11, 2011
BEFORE THE HONORABLE TERRENCE W. BOYLE
U. S. DISTRICT JUDGE



<u>APPEARANCES</u>:

<u>FOR THE PETITIONER</u>:

MR. NORMAN ACKER
ASST. U.S. ATTORNEY
310 NEW BERN AVE.
RALEIGH, NC


<u>FOR THE RESPONDENT</u>:

MR. JOSEPH ROSS
ASST. FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC



COURT REPORTER:  DONNA J. TOMAWSKI
STENOTYPE WITH COMPUTER AIDED TRANSCRIPTION

```
1              FRIDAY, FEBRUARY 11, 2011

2         THE COURT:  GOOD AFTERNOON.  MR. ACKER, TELL ME

3    WHERE YOU ARE IN THE DISCOVERY PRODUCTION.

4         MR. ACKER:  BE GLAD TO, YOUR HONOR.  THERE ARE

5    TWO BASIC KINDS OF INITIAL DISCLOSURES THAT WE'RE MAKING;

6    ONE IS THE DOCUMENTS, BASICALLY ALL OF THEIR MEDICAL

7    RECORDS, THEIR PSYCHOLOGICAL RECORDS, THEIR PRISON

8    DISCIPLINARY RECORDS, ET CETERA.  AND THEN THE OTHER KIND

9    OF INITIAL DISCLOSURE IS EXPERT REPORTS.

10       SO I'LL DEAL WITH THOSE TWO KINDS DIFFERENTLY FOR

11   EACH OF THE FIVE PEOPLE.  WOULD YOU LIKE ME TO GIVE YOU --

12        THE COURT:  WE WILL START WITH MR. EDWARDS AND

13   THEN MR. TIMMS AND MR. JOHNSON AND MR. HALL.

14        MR. ACKER:  YES.  SO FOR MR. EDWARDS, WE

15   COMPLETED ALL OF OUR INITIAL DISCLOSURES, BOTH THE

16   DOCUMENTS AND THE EXPERT REPORTS ON OCTOBER 4, OF 2010.

17        THE COURT:  OKAY.  SO DISCOVERY IS COMPLETE?

18        MR. ACKER:  FROM THE GOVERNMENT.  NOW, PURSUANT

19   TO THE STANDING ORDER, WHICH YOUR HONOR CERTAINLY CAN

20   MODIFY, BUT PURSUANT TO THE STANDING ORDER, THAT WOULD

21   HAVE GIVEN THE RESPONDENT UNTIL, I BELIEVE IT WAS

22   DECEMBER 6, TO PRODUCE.  THE RESPONDENT FILED A MOTION FOR

23   EXTENSION OF TIME FOR 90 DAYS, WHICH THE GOVERNMENT DID

24   NOT OPPOSE, BUT THE COURT HAS NOT RULED ON THAT.  THAT

25   WOULD BE A DEADLINE UNTIL MARCH 7, FOR THE RESPONDENTS TO
```

1  GET THEIR DISCOVERY TO US.

2       **THE COURT:** WHAT KIND OF DISCOVERY DO YOU EXPECT

3  TO GET FROM THEM?

4       **MR. ACKER:** WELL, THE MAIN THING IS IF THEY HAVE

5  AN EXPERT, WE NEED THE REPORT.  THE STANDING ORDER

6  REQUIRES THEM TO GIVE US ANY OTHER MEDICAL RECORDS, ANY

7  OTHER PSYCHOLOGICAL RECORDS, ANYTHING THEY PLAN TO USE AT

8  TRIAL THEY MUST DISCLOSE TO US, ALONG WITH THEIR EXPERT.

9     SO THAT'S CURRENTLY -- THEY HAVE REQUESTED UNTIL

10  MARCH 7.  I HAVE BEEN INFORMED THAT THEY WOULD LIKE TO

11  HAVE UNTIL MARCH 15, BUT YOU WOULD HAVE TO TAKE THAT UP

12  WITH THE PUBLIC DEFENDER.

13       **THE COURT:** I HAVEN'T REALLY GIVEN THIS ANY

14  THOUGHT BEFORE, BUT IT OCCURS TO ME IN THE WAY IN WHICH

15  THESE CASES BALANCE OUT, WHY DOES THE DEFENDANT -- I

16  UNDERSTAND YOU CAN SAY IT'S A CIVIL CASE AND THAT THERE'S

17  MUTUALITY AND THIS AND THAT, BUT WHY SHOULD THE DEFENDANT

18  HAVE TO TELL YOU ANYTHING?  IT SEEMS TO ME THAT THE

19  DEFENDANT SHOULDN'T HAVE TO TELL YOU A WORD.  IF IT WAS A

20  CRIMINAL CASE, THE DEFENDANT HAS NO OBLIGATION.  YOU CAN'T

21  ASK THE DEFENDANT FOR DISCOVERY.

22       **MR. ACKER:** I BELIEVE EVEN IN CRIMINAL CASES,

23  YOUR HONOR, IF THEY HAVE AN EXPERT I BELIEVE THEY HAVE

24  CERTAIN DISCOVERY OBLIGATIONS UNDER RULE 14.  I DON'T

25  PRIMARILY PRACTICE IN THE CRIMINAL AREA BUT THERE ARE SOME

1   DISCOVERY OBLIGATIONS EVEN IN CRIMINAL CASES.

2         **THE COURT:** IF THE DEFENDANT HAS AN EXPERT THAT

3   SAYS HE OR SHE IS INSANE, BUT I DON'T KNOW THAT THEY HAVE

4   AN OBLIGATION TO DISCLOSE EVIDENCE WHERE THEY DON'T HAVE A

5   BURDEN OF PROOF. I MEAN, THEY HAVE A BURDEN OF COMING

6   FORWARD WITH AN INSANITY DEFENSE, BUT --

7         **MR. ACKER:** I'D HAVE TO GO BACK TO THE RULES,

8   BUT I DO KNOW THAT THERE ARE SOME DISCOVERY OBLIGATIONS

9   EVEN IN CRIMINAL CASES.

10    BUT, YOUR HONOR, THIS IS A CIVIL CASE AND THEY ARE

11   REQUIRED TO DISCLOSE TO US CERTAIN THINGS, INCLUDING, AT A

12   MINIMUM, ANY EVIDENCE THAT THEY INTEND TO INTRODUCE AT

13   TRIAL.

14         **THE COURT:** THEY DON'T HAVE TO PROVE THAT THEY

15   ARE SANE; YOU HAVE TO PROVE THAT THEY ARE NOT SANE.

16         **MR. ACKER:** THAT'S CORRECT, YOUR HONOR. BUT THE

17   CIVIL RULES ARE SET UP SO BOTH PARTIES COME IN KNOWING, NO

18   SURPRISES, ESSENTIALLY FULL DISCLOSURE OF WHAT THEY INTEND

19   TO INTRODUCE AT TRIAL. IF THE RESPONDENT DECIDES THEY ARE

20   NOT GOING TO INTRODUCE ANY EVIDENCE, THEN CONCEIVABLY THEY

21   WOULDN'T HAVE TO PRODUCE ANYTHING TO US. NOW, THE

22   STANDING ORDER DOES AND CIVIL RULES PROVIDE A LITTLE MORE.

23         **THE COURT:** BUT I DON'T THINK THAT'S THOUGHT

24   THROUGH. I THINK THAT WAS JUST A KNEE-JERK STANDING ORDER

25   WHERE IT WAS GRAFTED ONTO THE PROCEEDINGS THAT IT'S A

1   CIVIL CASE AND THEREFORE IT'S JUST LIKE A CONTRACT SUIT OR

2   SOMETHING LIKE THAT.  THAT'S NOT THE REALITY OF IT.  THE

3   REALITY IS THEY SHOULDN'T HAVE TO PRODUCE ANYTHING.

4           **MR. ACKER:**  WELL, YOUR HONOR, THE OTHER PLACE

5   THAT EXPERT REPORTS ARE REQUIRED TO BE PRODUCED IS THE

6   PROCEDURE UNDER 4248 INCORPORATES THE PROCEDURES UNDER

7   SECTION 4247, AND UNDER THAT THE EXPERT REPORT IS GIVEN TO

8   THE COURT, IS FILED WITH THE COURT, SO THAT BOTH SIDES

9   HAVE EACH OTHER'S EXPERTS BEFORE THE HEARING.  THAT IS

10  ROUTINELY DONE IN THE 4246 CASES, WHICH ALSO USE THE

11  PROCEDURE UNDER 4247.

12          **THE COURT:**  THE ISSUE IS WHETHER YOU CORRECTLY

13  CERTIFIED THE PERSON WHEN YOU MADE THE CERTIFICATION.  IF

14  YOU DIDN'T, THEN THEY'RE TO BE RELEASED.

15          **MR. ACKER:**  WELL, THE ISSUE I THINK IS A LITTLE

16  BIT MORE THAN THAT.  I THINK THE BURDEN ON US IS A LITTLE

17  MORE THAN THAT, YOUR HONOR.  IT'S WHETHER OR NOT WE CAN

18  PROVE THE ELEMENTS IN THE STATUTE.  NOT JUST WHETHER THE

19  CERTIFICATION WAS CORRECT BUT WHETHER THE UNDERLYING FACTS

20  MEET THE BURDEN THAT WE HAVE BY A PREPONDERANCE OF THE

21  EVIDENCE.

22      BUT, YES, YOUR HONOR, THE BURDEN IS ON US, BUT IN A

23  CIVIL CASE AND SPECIFICALLY UNDER THE PROCEDURES SET OUT

24  IN SECTION 4247, THE EXPERT REPORTS ARE SUPPOSED TO BE

25  DISCLOSED IN ADVANCE.

1    IN ADDITION, YOUR HONOR, BECAUSE THIS IS A CIVIL CASE

2  THE STANDING ORDER, AND IT WAS NOT A KNEE-JERK STANDING

3  ORDER, IT'S SOMETHING THE FEDERAL PUBLIC DEFENDER AND

4  UNITED STATES ATTORNEY JOINTLY DISCUSSED, JOINTLY

5  PRESENTED A PLAN TO THE COURT, TO JUDGE BRITT TO WHOM ALL

6  OF THESE CASES WERE ASSIGNED AT THE TIME, AND IT'S MY --

7         **THE COURT:**  NO, DIDN'T THE STANDING ORDER COME

8  OUT AFTER *COMSTOCK* AND AFTER JULY?

9         **MR. ACKER:**  YES, YOUR HONOR.

10        **THE COURT:**  JUDGE BRITT DIDN'T HAVE ALL OF THESE

11  CASES THEN, THEY WERE SCATTERED AMONG THE REST OF US.

12        **MR. ACKER:**  I'D HAVE TO GO BACK AND LOOK, YOUR

13  HONOR, BUT I BELIEVE THAT WHEN WE FIRST STARTED TALKING TO

14  JUDGE BRITT ABOUT THESE, I BELIEVE ALL THE CASES WERE

15  STILL ASSIGNED TO HIM.

16        **THE COURT:**  YOU WEREN'T TALKING TO HIM ABOUT IT

17  UNTIL *COMSTOCK* GOT HANDED DOWN.

18        **MR. ACKER:**  THE *COMSTOCK* ORDER FROM THE SUPREME

19  COURT, YOU ARE CORRECT, YOUR HONOR.

20        **THE COURT:**  UNTIL THAT HAPPENED, YOU HAD NO

21  FORECAST THAT YOU WOULD BE HAVING DISCOVERY OR ANYTHING

22  ELSE.

23        **MR. ACKER:**  THAT'S CORRECT, YOUR HONOR.  SO IT'S

24  OUR CONTENTION THAT THE CIVIL RULES DO APPLY, THAT WE ARE

25  ENTITLED TO DISCOVERY UNDER THE CIVIL RULES TO THE FULL

1  EXTENT OF THE CIVIL RULES, AND CERTAINLY TO THE EXTENT

2  UNDER THE STANDING ORDER.

3       ONE OF THOSE THINGS, YOUR HONOR, THAT WILL COME UP IN

4  PARTICULAR WITH MR. EDWARDS IS, AND WITH ALL OF THESE, IS

5  WHETHER OR NOT WE ARE ENTITLED TO INTERVIEW AND DEPOSE THE

6  RESPONDENT.  IT'S OUR CONTENTION --

7            **THE COURT:**  THE RESPONDENT, MEANING THE

8  DETAINEE?

9            **MR. ACKER:**  THE DETAINEE.

10            **THE COURT:**  YOU DID THAT WHILE HE WAS IN THE

11  BOP.

12            **MR. ACKER:**  NO, YOUR HONOR.  MOST OF THESE

13  REFUSED TO BE INTERVIEWED BY OUR EXPERT.  SO OUR EXPERT

14  REPORTS ARE BASED SOLELY ON DOCUMENTARY EVIDENCE AND OTHER

15  OBSERVATIONAL EVIDENCE BUT NOT FROM AN INTERVIEW OF HIM.

16  MOST OF THESE REFUSED TO BE INTERVIEWED.

17            **THE COURT:**  OKAY.

18            **MR. ACKER:**  IF THE RESPONDENT, THE DETAINEE,

19  CONTINUES TO MAINTAIN THAT HE REFUSES TO TALK --

20            **THE COURT:**  FIFTH AMENDMENT PRIVILEGES.

21            **MR. ACKER:**  YES.  HE CERTAINLY CAN CLAIM IT.

22  NOW, WE WOULD CONTEND --

23            **THE COURT:**  YOU ARE NOT GOING TO GIVE HIM

24  IMMUNITY, ARE YOU?

25            **MR. ACKER:**  NO, YOUR HONOR.  WE CERTAINLY

BELIEVE HE'S ENTITLED TO CONTINUE TO CLAIM THOSE FIFTH

AMENDMENT PRIVILEGES.

NOW, IN CIVIL CASES, THE FINDER OF FACT MAY DRAW

INFERENCES FROM THAT.  SO THE COURT MAY OR MAY NOT DRAW

ANY INFERENCES FROM THE FACT THAT HE CLAIMED THE FIFTH

AMENDMENT.  BUT HE'S ENTITLED TO THAT; WE DON'T DISPUTE

THAT AT ALL.  HOWEVER, YOUR HONOR, IF HE CHOOSES TO TALK

TO THE EXPERT HIRED BY HIS ATTORNEYS, WE BELIEVE THAT IS

WAIVING HIS FIFTH AMENDMENT PRIVILEGES IF THAT EXPERT IS

GOING TO TESTIFY AT TRIAL.  BECAUSE THEN EVIDENCE FROM HIS

OWN MOUTH IS GOING TO COME IN THROUGH HIS EXPERT.

IF HE CHOOSES TO DO THAT, WE BELIEVE THAT HE SHOULD

BE REQUIRED TO ALSO SUBMIT TO AN INTERVIEW FROM THE

GOVERNMENT'S EXPERTS AS WELL AS SUBMIT TO A DEPOSITION

UNDER THE CIVIL RULES.  IT'S MY UNDERSTANDING, AND HIS

ATTORNEYS CAN CORRECT ME IF I'M WRONG, THAT MR. EDWARDS

HAS NOT YET SPOKEN TO THEIR EXPERT BUT INTENDS TO.  WE

CONTEND THAT IF HE EITHER HAS OR IF HE DOES, THAT WE'RE

THEN ENTITLED TO HAVE OUR EXPERT INTERVIEW HIM AND TO

DEPOSE HIM.

IF HE CHOOSES TO REMAIN SILENT, THAT'S FINE, YOUR

HONOR, BUT I DON'T THINK HE SHOULD BE ALLOWED TO TESTIFY

AT TRIAL.  HE'S GOT TO MAKE A DECISION ONE WAY OR THE

OTHER.  WE DON'T CARE WHICH ONE HE MAKES, BUT IF HE

CHOOSES -- IF HE WANTS TO TESTIFY AT TRIAL, THAT'S ONE OF

THE THINGS THAT MAKES IT DIFFERENT IN A CRIMINAL CASE.  IN

A CRIMINAL CASE, HE CAN WAIT UNTIL AFTER THE GOVERNMENT

PUTS ON ITS EVIDENCE, BUT IN A CIVIL MATTER IF HE REFUSES

TO SUBMIT TO DEPOSITION AND REFUSES TO SUBMIT TO AN

INTERVIEW BY OUR EXPERTS, THEN WE BELIEVE THAT BOTH HIS

TESTIMONY AND ANY TESTIMONY FROM ANYONE ELSE WHO HAS

SPOKEN TO HIM, INCLUDING HIS EXPERT, SHOULD BE EXCLUDED

FOR FAILURE TO COOPERATE WITH DISCOVERY.

  **THE COURT:**  AS AN ASIDE, IN *COMSTOCK* 2 IN THE

4TH CIRCUIT, DID THEY DIRECTLY ADDRESS THE CRIMINAL VERSUS

CIVIL ISSUE OR DID THEY -- WAS THAT NOT CONSIDERED TO BE

EMBEDDED IN THE REMAND?

  **MR. ACKER:**  I WOULD HAVE TO GO BACK -- I DON'T

BELIEVE THAT THE 4TH CIRCUIT DIRECTLY ADDRESSED THAT.

THEY MAY HAVE ADDRESSED IT, IN ESSENCE, IN THEIR ANALYSIS

TALKING ABOUT IT AS A CIVIL MATTER.  I'D HAVE TO GO BACK

AND REREAD THAT OPINION.

  **THE COURT:**  THE *TIMMS* OPINION SIDE-STEPPED THAT

COMPLETELY.  TIMMS WAS REMANDED WITHOUT EVER DEALING WITH

THE ISSUE OF WHETHER OR NOT IT WAS A CRIMINAL CASE.

  **MR. ACKER:**  THAT IS CORRECT, YOUR HONOR.

  **THE COURT:**  I MEAN, I'M JUST ASKING THIS TO SEE

IF I'M BARRED FROM TREATING IT LIKE A CRIMINAL CASE AND

SAYING THAT HE DOESN'T HAVE AN OBLIGATION TO TESTIFY, YOU

CAN'T COMPEL HIS TESTIMONY, AND YOU DON'T GET DISCOVERY.

1      **MR. ACKER:**  WELL, YOUR HONOR, IF I RECALL IN

2  *COMSTOCK* 2, THEY ADDRESSED THE ISSUE OF BURDEN OF PROOF

3  AND SPECIFICALLY FOUND THE BURDEN OF PROOF WAS A

4  PREPONDERANCE OF THE EVIDENCE.  I BELIEVE, WHETHER THEY

5  DIRECTLY ADDRESSED THAT ISSUE OR NOT, YOUR HONOR, IF THIS

6  WAS CRIMINAL THEN WE BELIEVE THAT IT WOULD HAVE HAD TO

7  HAVE BEEN BEYOND A REASONABLE DOUBT.  BUT THEY FOUND --

8  NOT PREPONDERANCE, CLEAR AND CONVINCING.  WE ONLY HAVE TO

9  PROVE BY CLEAR AND CONVINCING AND NOT BEYOND A REASONABLE

10 DOUBT.

11      SO I'D HAVE TO GO BACK TO THE LANGUAGE OF THE

12 OPINION, YOUR HONOR, TO MAKE ABSOLUTELY CERTAIN WHETHER

13 THEY ADDRESSED IT DIRECTLY, THE CIVIL VERSUS CRIMINAL

14 NATURE, OR ONLY INDIRECTLY.

15      **THE COURT:**  WELL, I THINK IN *COMSTOCK* 1 THERE

16 WAS NO VETTING OR DEVELOPING OF THE ISSUE OF WHETHER IT

17 WAS A CRIMINAL PROCEEDING RATHER THAN A CIVIL PROCEEDING.

18 IN *TIMMS*, THE ARGUMENT WAS THAT IRRESPECTIVE OF WHAT THE

19 STATUTE SAYS AND PUTTING ASIDE WHAT CONGRESS MAY HAVE

20 LEGISLATED AS APPLIED, IT WAS CRIMINAL.

21      **MR. ACKER:**  YOU STATE THAT CORRECTLY, YOUR

22 HONOR.

23      **THE COURT:**  AND I DON'T KNOW THAT *COMSTOCK* 2

24 EVER OPENED THAT UP AND DEALT WITH THE "AS APPLIED" ASPECT

25 OF IT WHERE THE CERTIFICATION AND THE PUNISHMENT THAT

1  RESULTED FROM IT WAS CRIMINAL.

2       **MR. ACKER:**  I'D HAVE TO GO BACK TO THE LANGUAGE

3  OF THE OPINION, BUT MY RECOLLECTION IS THAT THEY DEALT

4  WITH IT ONLY INDIRECTLY.

5       **THE COURT:**  WELL, IT CAN'T BE BOTH, IT CAN'T BE

6  LIKE CRIMINAL BUT NOT REALLY CRIMINAL.  IT HAS TO BE ONE

7  OR THE OTHER BECAUSE IF IT'S CRIMINAL THEN IT IMPLODES

8  WITH ALL SORTS OF CIVIL LIBERTIES, LIKE INDICTMENT AND EX

9  POST FACTO, AND DOUBLE JEOPARDY.  THERE'S A LIMITLESS

10  NUMBER OF BARRIERS THAT RISE UP IF IT'S CRIMINAL, EITHER

11  AS APPLIED OR IN ANY WAY.

12       **MR. ACKER:**  WELL, THAT'S WHY I BELIEVE, YOUR

13  HONOR, FOR PRECISELY THAT REASON I THINK *COMSTOCK* 2 DID --

14       **THE COURT:**  THEY DIDN'T SAY IT.

15       **MR. ACKER:**  THEY MAY NOT HAVE SAID IT.

16       **THE COURT:**  BOLD PRINT.  THIS IS A CIVIL CASE,

17  NOT A CRIMINAL CASE, PERIOD, WE MAKE THAT RULING.

18       **MR. ACKER:**  I DON'T BELIEVE THEY SAID THAT.

19  HOWEVER, THEY DID FIND THAT THE GOVERNMENT'S BURDEN IS

20  ONLY CLEAR AND CONVINCING AND NOT BEYOND A REASONABLE

21  DOUBT.  IF YOUR HONOR IS CORRECT THAT IT'S ONE OR THE

22  OTHER, THEN THAT FINDING SAYS IT'S CIVIL.

23       **THE COURT:**  YEAH, BUT THAT MAY BE -- I DON'T

24  KNOW WHAT IT IS, BUT IT MAY BE AN OUTGROWTH OF THE FACT

25  THAT THE TRIAL COURT, AT THE INITIAL *COMSTOCK* LEVEL, FOUND

1 THAT IT SHOULD BE PROOF BEYOND A REASONABLE DOUBT, NOT

2 CLEAR AND CONVINCING PROOF, AND THEY MAY HAVE BEEN LOCKED

3 INTO TALKING ABOUT THAT.  THE TRIAL COURT, IF I'M CORRECT,

4 IN *COMSTOCK* 1 BACK IN 2007-ISH, WHENEVER IT WAS, RULED

5 THAT IT WAS CIVIL AND THAT THE BURDEN OF PROOF WAS BEYOND

6 A REASONABLE DOUBT, WHICH IS A LITTLE BIT OF AN ANOMALY;

7 IS THAT NOT CORRECT?

8       **MR. ACKER:**  YOU ARE CORRECT, YOUR HONOR.  I

9 BELIEVE THAT IS CORRECT.  HOWEVER, THE 4TH CIRCUIT HAS THE

10 AUTHORITY TO UPHOLD A CONCLUSION OF THE DISTRICT COURT

11 EVEN FOR A DIFFERENT REASON.  SO IF THE 4TH CIRCUIT HAD

12 BELIEVED THAT THIS WAS A CRIMINAL MATTER, THEN THE 4TH

13 CIRCUIT, I BELIEVE, WOULD HAVE RULED THAT THE PROOF SHOULD

14 BE BEYOND A REASONABLE DOUBT.

15       **THE COURT:**  YEAH, AND IN *COMSTOCK* 2 THEY SAID IT

16 WAS BY CLEAR AND CONVINCING EVIDENCE.

17       **MR. ACKER:**  THAT'S CORRECT.  SO ACCORDING TO

18 YOUR HONOR'S ANALYSIS THAT IT HAS TO BE ONE OR THE OTHER,

19 I THINK THE 4TH CIRCUIT HAS RULED IT'S CIVIL.

20       **THE COURT:**  BY IMPLICATION.

21       **MR. ACKER:**  BY IMPLICATION.

22       **THE COURT:**  ALL RIGHT.  I MAY COME BACK.  I

23 THANK YOU FOR YOUR WORK.

24       **MR. ACKER:**  OKAY.

25       **THE COURT:**  OKAY.  HOW ABOUT WALTER WOODEN, IS

1    THAT A HABEAS?

2          **MR. ACKER:**  YOUR HONOR, WE HAVE NOT YET PRODUCED

3    THE WRITTEN DISCOVERY, ALTHOUGH WE'RE ANTICIPATING BEING

4    ABLE TO DO THAT NO LATER THAN THE END OF THIS MONTH.  WE

5    HOPE TO DO IT BY THE END OF NEXT WEEK BUT CERTAINLY NO

6    LATER THAN THE END OF THIS MONTH.  AND THEN THOSE EXPERT

7    REPORTS WE HAD ORIGINALLY SCHEDULED TO HAVE NO LATER THAN

8    MARCH 30TH, ALTHOUGH, YOUR HONOR, I CAN COMMIT TO

9    PRODUCING AT LEAST ONE EXPERT REPORT BEFORE THE MARCH 21

10   DEADLINE.  I WILL THEN INFORM THE COURT WHETHER WE INTEND

11   TO HAVE A SECOND ONE, IN WHICH CASE WE WOULD HAVE IT

12   AVAILABLE NO LATER THAN MARCH 30TH.

13         **THE COURT:**  IS THERE ANY ATTEMPT IN ANY OF THESE

14   FIVE CASES TO SETTLE THE CASE BY AGREEING BETWEEN THE

15   GOVERNMENT AND THE DEFENDANT THAT THE DEFENDANT WILL

16   STIPULATE TO OR NOT OPPOSE THE DETENTION AND BEGIN THE

17   REMEDIAL ASPECTS OF THE STATUTE?

18         **MR. ACKER:**  WE HAVE MADE A GENERAL INDICATION TO

19   THE FEDERAL PUBLIC DEFENDER.  I'M NOT SURE WE HAVE DONE IT

20   WITH EACH OF THE PARTIES REPRESENTED BY PANEL ATTORNEYS

21   THAT WE ARE WILLING TO CONSIDER THAT.  I'M NOT SURE HOW

22   REALISTIC THAT WOULD BE ON THEIR PART.  I THINK THEY'RE

23   ENTITLED TO A HEARING.

24         WE CERTAINLY HAVE OFFERED TWO THINGS.  NUMBER ONE,

25   THEY CAN BEGIN THEIR TREATMENT EVEN PRIOR TO THE

1  COMMITMENT HEARING.  THEIR CONCERN, I THINK, IS A

2  REASONABLE CONCERN THAT THEN THEIR STATEMENTS COULD BE

3  USED AGAINST THEM, THEIR STATEMENTS THEY MAKE IN

4  TREATMENT.

5      THAT HAS BEEN OFFERED TO ALL OF THEM.  THEY CAN

6  ENGAGE IN TREATMENT NOW.  CERTAINLY WE'RE MORE THAN HAPPY

7  TO, IF THEY WANT TO CONCEDE THAT THEY'RE SUBJECT TO

8  COMMITMENT AND BEGIN THEIR TREATMENT, AND THEN THEY WOULD

9  BE ENTITLED TO A HEARING AFTER SIX MONTHS TO SEE THE

10  STATUS OF THEIR TREATMENT.

11      I DON'T KNOW HOW REALISTIC IT WOULD BE FOR ANY OF

12  THEM TO CONCEDE TO THAT, BUT I THINK THAT MAY HAVE

13  HAPPENED IN ONE CASE IN BOSTON.

14          **THE COURT:**  OKAY.  WHAT'S YOUR POSITION ABOUT

15  WOODEN?

16          **MR. ROSS:**  WELL, IF EVERYTHING GOES AS MR. ACKER

17  SAYS, WE MIGHT BE READY FOR THAT IN MID-MAY.

18          **THE COURT:**  WELL, HE'S A PAROLEE WHOSE PAROLE

19  TERMINATED.  HE SERVED OUT THE BALANCE OF HIS PAROLE; IS

20  THAT RIGHT?

21          **MR. ROSS:**  YES, THAT WOULD HAVE BEEN FINISHED IN

22  OCTOBER OF 2010.

23          **THE COURT:**  SO HE HAS NO SUPERVISED RELEASE?

24          **MR. ROSS:**  HE DOES NOT.  WE DO HAVE AN

25  OUTSTANDING MOTION BEFORE THE COURT TO DISMISS BASED ON

```
1   THE D.C.--
2            THE COURT:  CODE DEFENDER.
3        MR. ROSS:  YES.
4            THE COURT:  ALL RIGHT.  YOU'LL COME BACK ON
5   MARCH 21 WITH A STATUS REPORT OF THIS ALSO?
6        MR. ACKER:  YES, YOUR HONOR.
7            THE COURT:  ALL RIGHT.  ANYTHING ELSE?
8        MR. ROSS:  NO, YOUR HONOR.
9        MR. ACKER:  NO, YOUR HONOR.
10           THE COURT:  ALL RIGHT.  THANK YOU ALL FOR YOUR
11  APPEARANCE TODAY.
12
13
14
15
16
17
18
19
20                      END OF TRANSCRIPT
21
22
23
24
25
```

1                           CERTIFICATE

2          THIS IS TO CERTIFY THAT THE FOREGOING TRANSCRIPT OF

3     PROCEEDINGS TAKEN AT THE CIVIL SESSION OF UNITED STATES

4     DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF THE

5     PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND

6     TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

7          THIS THE 26TH DAY OF AUGUST, 2011.

8

9

10                         /S/ DONNA J. TOMAWSKI

11                         DONNA J. TOMAWSKI
                           OFFICIAL COURT REPORTER
12

13

14

15

16

17

18

19

20

21

22

23

24

25